IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

IN RE:      RUDOLF C. DENKE, III,                    Case No. 14-32396-KRH
                                                     Chapter 13
                    Debtor.

RUDOLF C. DENKE, III,

            Movant,

v.                                                   Contested Matter

PNC BANK, N.A,
CITICORP TRUST BANK, FSB,
CITIMORTGAGE, INC.,
CITIBANK N.A,
and
BOBBI JO DENKE,

            Respondents.

## MEMORANDUM OPINION

Before the Court are three objections to claims (the "Objections to Claims") filed under Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") by the Debtor, Rudolf C. Denke, III (the "Debtor"), seeking the disallowance or reduction of proofs of claim filed by the Debtor's ex-wife and non-filing co-debtor Bobbi Jo Denke ("Ms. Denke").[1] The proofs of claim filed by Ms. Denke relate to real estate located at 321 Sycamore Drive, Fredericksburg, Virginia (the "Real Property"). The Real Property, which is owned by the Denkes, is encumbered by two deeds of trust. PNC Bank, NA ("PNC Bank") holds a note made by the Denkes that is secured by a first priority deed of trust on the Real Property. Citicorp Trust

---

[1] Mr. and Ms. Denke are collectively referred to as "the Denkes."

Bank, FSB ("Citicorp")[2] holds a note made by the Denkes that is secured by a second priority deed of trust on the Real Property.

The Court conducted two evidentiary hearings in order to resolve the Objections to Claims.[3] The first was held on October 14, 2014 (the "First Hearing"), and the second was conducted on December 11, 2014 (the "Second Hearing").[4] Neither PNC Bank nor Citicorp (together the "Secured Claimants") appeared at either of the two Hearings.

The primary issues presented by the Objections to Claims that were considered at the Hearings were: (i) whether the Secured Claimants were properly served with sufficient notice of this contested matter so as to satisfy the elements of due process; (ii) whether the proofs of claim filed on behalf of the Secured Claimants should be allowed in any amount; and (iii) whether the sum of $5,707.41 that the Chapter 13 Trustee has already paid to Ms. Denke in accordance with the Debtor's confirmed Chapter 13 Plan (the "Chapter 13 Plan") should be returned to the Chapter 13 Trustee as improperly paid.

The Court took the contested matter under advisement at the conclusion of the Second Hearing. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7054.[5]

---

[2] In addition to Citicorp Trust Bank, FSB, proof of claim number 6 ("Claim 6") also names CitiMortgage, Inc. and Citibank N.A. as their respective interests may appear. Citicorp Trust Bank, FSB was acquired by Citibank, N.A. as of January 1, 2012. For the purposes of this opinion all three entities will be referred to collectively as "Citicorp" unless individually identified otherwise.

[3] Objections to proofs of claim under Bankruptcy Rule 3007 are contested matters governed by Bankruptcy Rule 9014. *In re IBIS Corp.,* 272 B.R. 883, 893 (Bankr. E.D. Va. 2001); *In re Fleming*, 08-30200-KRH, 2008 LEXIS 4021, 2008 WL 4736269, at *1 (Bankr. E.D. Va. Oct. 15, 2008) ("The hearing on the claim objection is treated as a contested matter.").

[4] These two hearings are collectively referred to as "the Hearings."

[5] Bankruptcy Rule 9014(c) makes Bankruptcy Rule 7052 applicable to this contested matter. Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052, 9014.

2

**Jurisdiction and Venue**

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409.

**Factual and Procedural Background**

On April 3, 2004, the Debtor and Ms. Denke, who were husband and wife at the time, executed a promissory note (the "PNC Note") payable to the order of National City Mortgage Corp. in the original principal amount of $251,000.[6] On the same date, the Denkes also executed a deed of trust encumbering the Real Property (the "First Deed of Trust") as security for the PNC Note. The First Deed of Trust was duly recorded among the land records maintained in the Clerk's Office of the Circuit Court of the County of Spotsylvania, Virginia (the "Spotsylvania Clerk's Office"). On March 20, 2014, an assignment of the First Deed of Trust to PNC Bank was recorded in the Spotsylvania Clerk's Office. On August 23, 2006, the Debtor and Ms. Denke executed a promissory note (the "Citicorp Note") payable to the order of Citicorp.[7] A deed of trust encumbering the Real Property was executed by the Denkes and duly recorded in the Spotsylvania Clerk's Office as security for the Citicorp Note (the "Second Deed of Trust").

The Debtor and Ms. Denke subsequently separated. The Denkes entered into a Memorandum of Understanding dated April 4, 2011 (the "Property Settlement Agreement"). A Final Decree of Divorce was entered on October 21, 2011, dissolving the Denkes' marriage. Under the terms of the Property Settlement Agreement, the Debtor agreed to assume

---

[6] PNC Financial Services subsequently acquired National City Corp., and the PNC Note is currently held by PNC Bank.

[7] The PNC Note and the Citicorp Note are hereinafter referred to as the "Notes."

3

responsibility for the repayment of both of the Notes held by the Secured Claimants.[8] Additionally, the Debtor agreed to hold Ms. Denke harmless from any claims that might be asserted against her by either of the Secured Claimants.

The Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code[9] on April 30, 2014 (the "Petition Date"). The Debtor listed both Notes secured by the Deeds of Trust encumbering the Real Property on Schedule D annexed to his bankruptcy petition. The Debtor scheduled the outstanding balance of the PNC Note in the amount of $192,801 and the outstanding balance of the Citicorp Note in the amount of $81,852.02. The Debtor listed the tax assessment as the value of the Real Property in the amount of $197,300.

The Debtor's Chapter 13 Plan proposed to surrender the Real Property upon confirmation in order to permit the Secured Claimants to immediately institute foreclosure proceedings and liquidate their collateral in satisfaction of the secured portion of their respective claims. To the extent that the surrendered Real Property failed to fully satisfy the claims held by either of the Secured Claimants, the Debtor's Chapter 13 Plan provided for the payment in full of any timely filed deficiency claim as a non-priority unsecured claim. Paragraph 11 of the Debtor's Chapter 13 Plan expressly required that "[a]ny claim filed alleging an unsecured claim to the extent that surrendered collateral does not satisfy the alleged original secured claim shall be filed by the proof of claim deadline . . . . Any unsecured deficiency claim filed after the claims deadline set in this case shall be time-barred." (emphasis omitted). The deadline for nongovernmental entities to file proofs of claim against the estate in this case was established by Bankruptcy Rule 3002(c) as September 17, 2014 (the "Claims Bar Date").

---

[8] The Divorce Decree "affirmed, ratified, and incorporated" the terms of the Property Settlement Agreement.

[9] 11 U.S.C. §§ 1301–1330. All further references to the Bankruptcy Code are to the Bankruptcy Code as codified at 11 U.S.C. §§ 101 *et seq*.

4

No objections to confirmation were filed in the case. The Court confirmed the Debtor's consensual Chapter 13 Plan by order entered July 7, 2014. The contents of the confirmed Chapter 13 Plan thereafter became binding upon all creditors that received proper notice of the Chapter 13 Plan but failed to object. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010). Since confirmation of the Chapter 13 Plan, the Debtor has fully performed thereunder. All payments due to the Chapter 13 Trustee are current. The confirmed Chapter 13 Plan provides that all creditors holding allowed claims will be paid in full. While separate counsel for each of the Secured Claimants filed a notice of appearance in this bankruptcy case, neither PNC Bank nor Citicorp filed a proof of claim prior to the Claims Bar Date.

Three days following confirmation of the Chapter 13 Plan, PNC Bank on July 10, 2014, filed a Motion for Relief from Stay and Co-Debtor Stay in order to commence foreclosure proceedings against the Real Property. In accordance with the terms of the confirmed Chapter 13 Plan, the Debtor consented to the requested relief. The Court entered an order granting PNC Bank relief from stay on August 20, 2014 so that PNC Bank could proceed with foreclosure.

When the Claim's Bar Date passed with no proof of claim having been filed by either of the Secured Claimants, Ms. Denke, in her capacity as a non-filing co-debtor, took it upon herself to file claims on their behalf. Ms. Denke filed claim number 5 ("Claim 5") on behalf of PNC Bank and Claim 6 on behalf of Citicorp. Both Claim 5 and Claim 6 seek repayment from the Debtor of the Notes secured by the Deeds of Trust encumbering the Real Property. Ms. Denke seeks to be held harmless from any potential future liability that she may have to either PNC Bank or Citicorp. In that regard, Ms. Denke also timely filed claims on her own behalf. Claim

5

number 2 ("Claim 2"), which was later amended by claim number 4 ("Claim 4"),[10] is in the unsecured amount of $274,653—the total of the amounts listed in the Debtor's Schedule D as owed to PNC Bank and Citicorp. Ms. Denke claims this amount is owed pursuant to the terms of the Denkes' Property Settlement Agreement under which the Debtor became primarily liable for the repayment of the Notes held by the Secured Claimants.

**Analysis**

I

The Supreme Court of the United States has held that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also In re Circuit City Stores, Inc.*, No. 08-35653-KRH, 2010 WL 2208014, at *7 (Bankr. E.D. Va. May 28, 2010) (citing *Mullane*, 339 U.S. at 314) ("In order to satisfy the requirements of due process, notice must be reasonably calculated to apprise interested persons of the pending action."). "The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance." *Mullane*, 306 U.S. at 314 (internal citations omitted). The means employed of effectuating service must be intended to actually inform the absent party. *See id.* The Court is satisfied that these requirements have been met as to both PNC Bank and Citicorp in this case. The Debtor and Ms. Denke each made repeated attempts to actually inform the absent Secured Claimants of the proceedings throughout this case. The

---

[10] Claim 2 asserted an amount identical to that listed in Claim 4 but it stated that the liability was both secured and contingent. Claim 4 amended Claim 2 to provide that the claimed liability was unsecured and not contingent. As Claim 2 has been subsumed by Claim 4, both proofs of claim are collectively referred to as "Claim 4."

6

methods and means utilized to apprise the Secured Claimants with notice of the pendency of the contested matter in this case were not only reasonably calculated to inform, but in fact did inform them of the proceedings at every juncture.

The Objections to Claims filed by the Debtor is a contested matter "otherwise governed by [the Bankruptcy Rules]" that is not commenced by motion. Fed. R. Bankr. P. 9014. While Bankruptcy Rule 7004 is not necessarily controlling, *see Summit City Limits, LLC v. AMF Bowling Worldwide (In re AMF Bowling Worldwide)*, 12-36495-KRH, 2013 Bankr. LEXIS 4236 (Bankr. E.D. Va. Oct. 9, 2013), that Bankruptcy Rule does provide a failsafe procedure for the service of an objection to a proof of claim.[11] In the case of an institution insured by the Federal Deposit Insurance Corporation ("FDIC"), Bankruptcy Rule 7004(h) requires that service be effected "by certified mail addressed to an officer of the institution." Fed. R. Bankr. P. 7004(h). An "insured depository institution" is defined as "any bank or savings association the deposits of which are insured by the [FDIC] pursuant to [11 U.S.C. § 1811, *et seq.*]." 12 U.S.C. § 1813(c)(2). In turn, "bank" is defined as "any national bank and State bank, and any Federal branch and insured branch." *Id.* § 1813(a). Notably absent from any of these definitions are subsidiaries of an "insured depository institution" that are not themselves FDIC insured. *See In re Tudor*, 282 B.R. 546, 550–51 (Bankr. S.D. Ga. 2002) ("A creditor is therefore not entitled to be served under Rule 7004(h) by virtue of its being a subsidiary of an insured depository institution."). PNC Bank is an FDIC institution, as is Citibank, N.A. The Bankruptcy Rule would require both to be served in accordance with Bankruptcy Rule 7004(h). As CitiMortgage

---

[11] This is a Chapter 13 case in which the Court has not entered an order under either of Bankruptcy Rules 2002(m) or 9007 designating an alternative manner and procedure for serving notice. See *Summit City Limits, LLC*, 2013 Bankr. LEXIS 4236, distinguishing in the context of a Chapter 11 case *In re Boykin,* 246 B.R. 825 (Bankr. E.D. Va. 2000) (holding that an objection to claim must be served under Bankruptcy Rule 7004).

7

is not FDIC insured, it did not need to be served in accordance with Rule 7004(h). CitiMortgage could be served by first class mail in accordance with Bankruptcy Rule 7004(b)(3).

In this case PNC Bank, Citibank, N.A., and CitiMortgage all received proper service under Rule 7004. Notice of the contested matter was served on the president of PNC Bank via certified mail. Notice of the contested matter was served on the chief executive officer of Citicorp via certified mail. CitiMortgage received notice both by certified mail on its chief executive officer and by first class mail on its registered agent. Therefore, the Secured Claimants have received sufficient notice of this matter so as to satisfy due process.

When the Secured Claimants failed to appear at the First Hearing held on October 14, 2014, the Court adjourned this matter even though service had been properly effected. The Court required counsel for the Debtor and Counsel for Ms. Denke to separately re-serve the Secured Claimants under Bankruptcy Rule 7004(h) in order to inform them about the pendency of the Second Hearing at which their claims would be estimated and perhaps disallowed and to ensure that the Secured Claimants were sufficiently apprised that the Court's ruling would be binding upon them not only as for the Debtor but also as for Ms. Denke. PNC Bank was served with notice of the Second Hearing (the "Second Hearing Notice") via certified mail directed to its president on October 16, 2014.[12] Citibank N.A. was served with the Second Hearing Notice

---

[12] The Second Hearing Notice advised the Secured Claimants that the Court had scheduled a continued hearing with respect to claim numbers 2, 5, and 6 as amended for December 11, 2014 at 10:00 A.M. The notice clearly stated in all caps "YOUR CLAIM MAY BE REDUCED, MODIFIED OR ELIMINATED." The notice went on to recite again in all caps:

> AT THE SCHEDULED HEARING, IN ORDER TO AVOID UNDUE DELAY OF THE ADMINISTRATION OF THE CASE, YOUR CLAIM MAY BE ESTIMATED AND DETERMINED BY FINAL ORDER OF THE COURT, IN ACCORDANCE WITH 11 U.S.C. §§ 502(b) AND 502(c), AND THEREBY FIXED IN AN AMOUNT CERTAIN OR ELIMINATED IN ITS ENTIRETY, BOTH AS TO THE DEBTOR RUDOLF C. DENKE, III AND WITH RESPECT TO THE NON-FILING CO-DEBTOR BOBBI JO DENKE.

The notice advised what steps had to be taken to protect the Secured Claimants' interest. The consequences of failing to attend the Second Hearing were detailed separately in bold type.

8

via certified mail directed to its chief executive officer on the same day. CitiMortgage was again served both by certified mail on its chief executive officer and by first class mail on its registered agent.

Any doubt about the adequacy of service in this case is completely dispelled by the Secured Claimants' actual participation in the bankruptcy case. PNC Bank filed a notice of appearance in this case though its counsel Brandon R. Jordan of Samuel I. White, P.C. on July 3, 2014. CitiMortgage filed a notice of appearance in this case through its counsel James M. Collins of Morris Hardwick Schneider, PLLC on August 18, 2014. A second notice of appearance was filed by CitiMortgage through its substitute counsel Stephen F. Relyea of BWW Law Group, LLC on October 28, 2014. The Bankruptcy Rules permit as an alternative form of service of a contested matter on an FDIC institution, service by mail on an attorney for the institution that has made an appearance in the case. Fed R. Bankr. P. 7004(h)(1). Counsel for each of the Secured Claimants received notice of the contested matter prior to both Hearings through the Court's Case Management/Electronic Case Files ("CM/ECF") system. The Court's CM/EMF protocol provides that service through the CM/ECF system on registered participants "shall be the equivalent of service of the filing by first class mail, postage prepaid." As counsel for both of the Secured Claimants are registered CM/ECF participants, PNC Bank and CitiMortgage received proper service upon their respective attorneys so as to satisfy Rule 7004(h)(1).[13]

The Court finds that the Secured Claimants were properly served with notice of the contested matter in accordance with Rule 7004. The Court concludes that the requirements for due process have been satisfied. The Court has personal jurisdiction over the parties to this

---

[13] Counsel for Citibank, N.A. was also served through the Court's CM/ECF system even though counsel for Citibank never formally noted an appearance in this case.

9

contested matter. As the Secured Claimants have not filed proofs of claim in this case, have not lodged any objection to the proceedings, have not appeared or participated at either Hearing, and have not made any attempt to protect their interest or advance their cause despite having receiving due and sufficient notice of the contested matter, the Court holds that they will be bound by the outcome of these proceedings.

Ms. Denke had the authority to file proofs of claim on the behalf of the Secured Claimants in order to protect her own interests once it became apparent that the Secured Claimants were not going to do so. Section 501(b) of the Bankruptcy Code states "[i]f a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor, or that has secured such creditor, may file a proof of such claim." 11 U.S.C. § 501(b). Additionally, Bankruptcy Rule 3005(a) provides that:

> If a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), any entity that is or may be liable with the debtor to that creditor, or who has secured that creditor, may file a proof of the claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or Rule 3003(c) whichever is applicable. No distribution shall be made on the claim except on satisfactory proof that the original debt will be diminished by the amount of distribution.

Fed. R. Bankr. P. 3005(a).[14]

---

[14] The purpose of section 501(b) of the Bankruptcy Code and Bankruptcy Rule 3005(a) has been described as follows:

> Section 501(b) and Rule 3005 protect the codebtor against the danger that the creditor, faced with the bankruptcy of the prime debtor, might decide to rely on the solvency of the codebtor and therefore, to abstain from filing a proof of claim. In such a case, while there might be a prospect of securing at least partial satisfaction from the assets of the debtor, the creditor would forego this possibility and merely proceed with his claim against the codebtor. By the time the creditor decided to take such action, any period fixed for the filing of claims might have elapsed. Indeed, the debtor's estate might have been fully administered by the trustee so that the codebtor would be left without the possibility of even partial reimbursement to the extent he has satisfied the claim of the debtor's creditor. The debtor's discharge would remove the possibility that his codebtor could secure indemnification from him at some future time.

*In re Hemingway Transport, Inc.*, 993 F.2d 915, 927 n.13 (1st Cir. 1993) (quoting *Collier on Bankruptcy* ¶ 509.02 (15th ed. 1991)).

The claims bar date in this case passed on September 17, 2014 without either Secured Claimant filing a proof of claim. As a non-filing co-debtor liable to the Secured Claimants along with the Debtor, Ms. Denke is "an entity that is liable to such creditor with the debtor," falls within the scope of section 501(b) of the Bankruptcy Code and Bankruptcy Rule 3005(a), and may file proofs of these creditors' claims. Ms. Denke filed her proofs of claim on behalf of PNC Bank and Citicorp on September 24, 2014, placing her well within the thirty-day period required by Bankruptcy Rule 3005(a). Thus, Ms. Denke's filing of these proofs of claim was timely.

II

Ms. Denke filed Claim 5 on behalf of PNC Bank in the amount of $196,000. She asserted that $80,000 of that amount was a secured claim and the balance was an unsecured claim based on her estimate of the value of the Real Property.[15] Ms. Denke filed Claim 6 on behalf of Citicorp as a totally unsecured claim in the amount of $81,852.02.

The Debtor's Schedule D and the Chapter 13 Plan both treat the claim of PNC Bank as fully secured. The Chapter 13 Plan states that the Debtor will surrender the Property to PNC Bank in satisfaction of the bank's secured claim. The Plan gives PNC Bank the right to file a deficiency claim for any amounts unsatisfied from the disposition of the Property. The Debtor consented to the request of PNC Bank for relief from the automatic stay on August 20, 2014 so that it could commence foreclosure proceedings. To date, however, PNC Bank has not foreclosed against the Property. The deficiency portion of Claim 5 (if any) is yet to be liquidated.

---

[15] A secured creditor's claim is secured only to the extent of the value of the collateral. Beyond that amount the claim is unsecured. 11 U.S.C. § 506(a). When a plan provides for collateral to be surrendered to the secured creditor, the amount of the secured portion of the claim must be ascertained before an unsecured claim can be allowed for any deficiency.

The Debtor argues that Claim 5 and Claim 6 must be disallowed as general unsecured claims because the Secured Claimants, having failed to liquidate their collateral, cannot meet the burden of proving their respective deficiency claims.  The Debtor relies on *In re Hilton*, No. 12-61102, 2013 WL 6229100 (Bankr. W.D. Va. Dec. 2, 2013).  While that case does contain facts relatively analogous to the case at bar, its holding is readily distinguishable.  The debtors' Chapter 13 plan in *Hilton* proposed to terminate the automatic stay upon confirmation.  The plan required the debtors to surrender their interest in their real property to the secured creditor that held the first deed of trust on the property so that the secured creditor could immediately institute foreclosure proceedings in satisfaction of its secured claim.  *Id.* at *1.  The debtors' plan expressly provided for any deficiency claim to be filed within 180 days after entry of the confirmation order.  *Id.* at *2.  The plan required any such deficiency proof of claim to "include appropriate documentation establishing that the collateral surrendered has been liquidated, and the proceeds applied, in accordance with applicable state law."  *Id.*  The secured creditor in *Hilton* neither foreclosed nor did it timely file a deficiency claim in accordance with the confirmed plan.  The court, finding that the secured creditor was bound by the terms of the confirmed plan,[16] disallowed the secured creditor's claim because the creditor failed to prove the amount of its deficiency claim in accordance with the confirmed plan.  *Id.* at *9.

The Chapter 13 Plan in the case at bar does not require that a proof of deficiency claim include documentation evidencing liquidation of the Real Property as was the case in *Hilton*.  There is no language in the Debtor's Plan, express or otherwise, suggesting that the Secured Claimants were required to actually foreclose on the Real Property as a condition for filing an unsecured deficiency claim.  Furthermore, the claims filed by Ms. Denke on the Secured Claimants' behalf, were received timely.  There is no infraction of the confirmed Chapter 13

---

[16] The court cited *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

Plan in this case as there was in *Hilton*. As the unsecured portion of each of the claims filed on behalf of the Secured Claimants remains unliquidated, Ms. Denke has asked the Court to estimate the deficiency claims.

Bankruptcy Code section 502 governs the allowance of claims in a bankruptcy case.[17] *See* 11 U.S.C. § 502. Under subsection 502(c): "There shall be estimated for purpose of allowance under this section— (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c). "The purpose of allowing the estimation of claims is to avoid undue delay in the administration of the case." *In re Porter*, 50 B.R. 510, 517 (Bankr. E.D. Va. 1985). "Neither the Code nor the Rules prescribe any method for estimating a claim, and it is therefore committed to the reasonable discretion of the court, . . . which should employ whatever method is best suited to the circumstances of the case." *In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996) (citing *In re Hydrox Chemical Co.*, 194 B.R. 617, 623 (Bankr. N.D. Ill. 1996); *In re Thomson McKinnon Securities, Inc.*, 191 B.R. 976, 979 (Bankr. S.D.N.Y. 1996)). Section 502(c) is a mandatory, not a permissive provision. It "creates in the Court an affirmative duty under proper circumstances to estimate any unliquidated claim." *In re Nova Real Estate Investment Trust*, 23 B.R. 62, 65 (Bankr. E.D. Va. 1982). Difficulty in estimating the value of a claim does not constitute an appropriate basis for disallowing a prepetition claim against the Debtor's estate. *See In re Hemingway Transport, Inc.*, 954 F.2d 1, 8 (1st Cir. 1992).

---

[17] Only claims that have been allowed can be paid under a confirmed plan in a Chapter 13 bankruptcy case. Fed. R. Bankr. P. 3021.

The Court finds that the liquidation of the claims of the Secured Claimants would unduly delay the administration of this case.[18] PNC Bank has had the ability to foreclose on the Property since late August 2014, but it has chosen not to do so. Neither creditor has seen fit to participate in the claims allowance process despite having received due and proper notice of the Objections to Claims and the pending adjudication of the validity and amounts of their claims. If the Court does not estimate the claims of the Secured Claimants now, the entire case will be delayed. All of the other creditors holding allowed claims against the estate will be frustrated. A primary tenant of the bankruptcy process—the effective and efficient administration of the Debtor's estate—will be thwarted. Accordingly, the Court will estimate the unsecured deficiency claims.

The Court may take all relevant facts into consideration when estimating the value of an unliquidated claim. Both the Debtor and Ms. Denke provided the Court with evidence regarding the value of the Real Property. The Debtor contends that the tax-assessed value of the Real Property set forth in the Debtor's confirmed Chapter 13 Plan—$197,300—is binding on the Secured Claimants. The Debtor argues that the provision in his Chapter 13 Plan stating that PNC Bank holds a secured claim in the amount of $192,801 is controlling. There was conflicting evidence offered at the Hearings regarding the condition of the Real Property. Ms. Denke, who has not been inside the house located on the Real Property since 2011, testified that she believed the value of the Real Property might be as low as $80,000 due to a broken sewer line. However, Ms. Denke had the Property appraised by a professional certified appraiser. The appraiser inspected both the interior and exterior of the house located on the Real Property and determined that the fair market value of the Real Property was $233,500 in its current condition.

---

[18] One of the most valuable aspects of the bankruptcy process is the "prompt and effectual administration and settlement of the [debtor's] estate." *Katchen v. Landy*, 382 U.S. 323, 328 (1996).

14

The evidence before the Court is that Claim 5 is asserted in the amount of $196,000. The estimated value of the Real Property is somewhere between $197,300 as presented by the Debtor's Chapter 13 Plan and $233,500 as presented by the certified appraiser one week prior to the Second Hearing. Taking this credible evidence into consideration, the Court finds that the value of the Real Property exceeds the amount of Claim 5. As contemplated by the Debtor's Chapter 13 Plan, the Court estimates that Claim 5 would be satisfied in full by the liquidation of the Real Property. PNC Bank is not entitled to have a deficiency claim asserted on its behalf. Claim 5 will be allowed as a fully secured claim and will be disallowed as a general unsecured claim.

Claim 6 is an entirely different matter. The Bankruptcy Code requires the court to "determine the amount of [Claim 6] . . . as of the date of the filing of the petition." 11 U.S.C. § 502(b). The uncontroverted evidence before Court was that, as of the Petition Date, the total amount owed under the Citicorp Note secured by the Second Deed of Trust was $81,852.02. The Court estimates that, after factoring in the transaction costs associated with conducting a foreclosure sale, it is unlikely that excess proceeds would remain available for application against Claim 6. Citicorp's claim, therefore, is found to be entirely unsecured. The deficiency claim asserted by Ms. Denke on Citicorp's behalf will be allowed for the full amount owed on the Citicorp Note as of the Petition Date. Claim 6 will be allowed as a general unsecured claim in the amount of $81,852.02.

The Debtor's confirmed Chapter 13 Plan provides for Citicorp's Claim 6 to be paid in full without interest. Upon the completion of the Debtor's Chapter 13 Plan, Claim 6 will be satisfied. Citicorp will no longer have an interest in the Real Property and neither the Debtor nor Ms. Denke will have any ongoing liability on the Citicorp Note.

Next, the Court must address Claim 4. Ms. Denke filed Claim 4 on her own behalf as an unsecured claim in the amount of $274,653. This figure derives from the sum of the balances outstanding on the Notes held by the Secured Claimants as of the Petition Date. Thus, Claim 4 duplicates the very same liability asserted by Ms. Denke on behalf of PNC Bank and Citicorp in Claim 5 and Claim 6 respectively. Bankruptcy Code section 502(e) provides:

> (1) [T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor . . . to the extent that—
> . . . .
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution . . . .

11 U.S.C. § 502(e). "[S]ection 502(e)(1)(B) is applicable to a debt owed by the debtor to a creditor which has been guaranteed by a third party." 4 *Collier on Bankruptcy* ¶ 502.06[2][d] (16th ed. 2014). Even though the Debtor assumed responsibility for paying the claims held by the Secured Claimants and for holding Ms. Denke harmless, Ms. Denke nevertheless remains "liable with the debtor," and therefore falls under the purview of this subsection.

All three elements necessary for section 502(e)(1)(B) of the Bankruptcy Code to apply are satisfied in the case at bar. *In re Provincetown-Boston Airlines, Inc.*, 72 B.R. 307, 309 (Bankr. M.D. Fla. 1987). First, the claim must be one for reimbursement or contribution. As Claim 4 seeks indemnification against any potential future liability Ms. Denke may have to either of the Secured Claimants, this first condition is met. Second, the individual or entity "asserting the claim for reimbursement or contribution must be 'liable with the debtor' on the claim." *Id.* Ms. Deneke is liable with the Debtor as a co-maker of the notes held by the Secured Claimants. Third, the claim asserted must be contingent when it is allowed or disallowed. The contingency requirement is satisfied as well.

"A contingent claim is by definition a claim which has not yet accrued and which is dependent upon some future event that may never happen." *Id.* at 310. "The contingency contemplated by § 502(e)(1)(B) relates to both payment and liability." *In re Drexel Burnham Lambert Group, Inc.*, 148 B.R. 982, 986 (Bankr S.D.N.Y. 1992) (citing *In re Pacor, Inc.*, 110 B.R. 686, 689 (Bankr. E.D. Pa. 1990)). While Ms. Denke remains protected from Citicorp under 11 U.S.C. § 1301 during the pendency of this case, Claim 4 will remain contingent until completion of the confirmed Chapter 13 Plan.

The Debtor's Chapter 13 Plan provides for the satisfaction in full of the claims held by the Secured Claimants. The fully secured claim held by PNC has been satisfied by the surrender of its collateral. The allowed unsecured claim held by Citicorp will be paid in full through the Debtor's confirmed Chapter 13 Plan. By disallowing Ms. Denke's "contingent claim for reimbursement or contribution, section 502(e)(1)(B) insures that the estate will not be liable to the primary obligor and the guarantor for the same debt." *Collier on Bankruptcy*, *supra*, at ¶ 502.06[2][d].

Accordingly, Claim 4 must be disallowed. Provided the Debtor successfully completes his Chapter 13 Plan, Ms. Denke will have no remaining liability to either of the Secured Claimants. The contingency will be resolved.

III

Finally, the Court must address what must be done with the $5,707.41 that the Chapter 13 Trustee has already paid to Ms. Denke under the Chapter 13 Plan on Claim 4. While Ms. Denke did not file Claim 4 as a priority claim, the proof of claim form did make reference to the Denkes' divorce decree and the Property Settlement Agreement. This reference resulted in the

17

mislabeling of the claim and in its payment as a priority claim in error.[19] When the Chapter 13 Trustee identified the error, Ms. Denke immediately placed the funds she had mistakenly received into escrow pending further order of the Court. Based on the Court's findings and conclusions set forth above, Ms. Denke shall immediately return these funds to the Chapter 13 Trustee for distribution in accordance with the Chapter 13 Plan.

## Conclusion

After examination of the applicable statutory authority, case law, pleadings, the evidence presented at the Hearings, and the arguments of counsel, the Court holds that: (i) PNC Bank and Citicorp received due and proper service of this contested matter sufficient to satisfy the notice requirements of due process and are therefore bound by the Court's adjudication of their timely filed claims; (ii) Claim 5 held by PNC Bank is fully secured and is satisfied in full by the surrender of the Real Property to PNC Bank under the terms of the confirmed Chapter 13 Plan; (iii) Claim 6 held by Citicorp is fully unsecured, is allowed as a general unsecured non-priority claim in the amount of $81,852.02, and will be satisfied in full upon completion of the confirmed Chapter 13 Plan; (iv) Claim 4 filed by Ms. Denke is disallowed as it is a contingent claim under section 502(e)(1)(B) of the Bankruptcy Code; and (v) Ms. Denke shall return the sum of $5,707.41 that was paid to her in error in this case to the Chapter 13 Trustee for distribution in accordance with the confirmed Chapter 13 Plan.

---

[19] The Debtor's obligation to assume primary responsibility for the repayment of the Notes held by the Secured Claimants under the terms of the Property Settlement Agreement is not in the nature of a Domestic Support Obligation under 11 U.S.C. § 523(a)(5) as that term is defined at 11 U.S.C. § 101(14A), but rather is a general, unsecured, non-priority obligation under 11 U.S.C. § 523(a)(15). The Debtor's obligation is dischargeable upon the successful completion of the Debtor's Chapter 13 Plan. *See* Order entered November 25, 2014 in Adversary Proceeding Number 14-03133-KRH.

     A separate order shall issue.

ENTERED: <u>Jan 23 2015</u>

                       <u>/s/ Kevin R. Huennekens</u>
                UNITED STATES BANKRUPTCY JUDGE

Entered on Docket: Jan 23 2015